1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE JESUS HERNANDEZ, JR.<br><div align="right">Petitioner,</div><br>v.<br><br>UNITED STATES OF AMERICA,<br><div align="right">Respondent.</div> | Case Nos.:  23-cv-01319-AJB;<br>22-cr-00262-AJB<br><br>**ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255**<br><br>**(Doc. Nos. 1; 28)** |

Before the Court is Petitioner Jose Jesus Hernandez, Jr.'s ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("Motion"), alleging ineffective assistance of counsel by his attorney, Antonio F. Yoon. (Doc. No. 28.)[1] Respondent the United States (the "Government") filed an opposition (Doc. No. 38), to which Petitioner replied (Doc. No. 50[2]). Having reviewed the parties' briefs and all relevant

---

[1]    The instant Motion is filed in both Petitioner's civil case and the underlying criminal case. (*Compare* Doc. No. 1, *Hernandez v. United States*, No. 23-cv-01319-AJB (S.D. Cal.) *with* Doc. No. 28, *United States v. Hernandez*, No. 22-cr-00262-AJB-1 (S.D. Cal.).) Hereafter, all docket entries refer those in Petitioner's criminal case unless otherwise specified.

[2]    Petitioner's reply was due to the Court by October 23, 2023 (Doc. No. 40); however, on February 26, 2024, Petitioner filed a letter requesting the status of his reply (Doc. No. 44). The Court ordered the Government to respond. (Doc. No. 46.) The Government then filed a status report stating it could not find the filing Petitioner asserted mailing but would not oppose Petitioner's filing a reply at that time. (Doc.

filings, and for the reasons set forth below, the Court **DENIES** Petitioner's Motion.

## I.    BACKGROUND

On November 17, 2020, Petitioner was arrested at the San Ysidro Port of Entry in San Diego, California, when law enforcement found methamphetamine and fentanyl concealed in the vehicle Petitioner was driving. (Doc. No. 38 at 1[3]; *see also* Doc. No. 1, *USA v. Hernandez et al.*, No. 21-cr-00279-AJB-1 (S.D. Cal. Nov. 18, 2020).) On November 18, 2020, Petitioner made his initial appearance before then Magistrate Judge Andrew G. Schopler, and Judge Schopler appointed Mr. Yoon to represent Petitioner. (Doc. No. 4, *USA v. Hernandez et al.*, No. 21-cr-00279-AJB-1 (S.D. Cal. Nov. 18, 2020).)

On February 18, 2021, Petitioner waived indictment before Magistrate Judge Mitchell D. Dembin, and a two-count information was filed, charging Petitioner with Importation of Methamphetamine and Fentanyl in violation of 21 U.S.C. §§ 952 and 960. (Doc. Nos. 43, 44, *USA v. Hernandez et al.*, No. 21-cr-00279-AJB-1 (S.D. Cal. Feb. 18, 2021).) Petitioner was arraigned and a not guilty plea entered. (Doc. No. 44, *USA v. Hernandez et al.*, No. 21-cr-00279-AJB-1 (S.D. Cal. Feb. 18, 2021).) A Motion in Limine Hearing was held by the Court on January 31, 2022, and a jury trial was set for March 8, 2022. (Doc. No. 110, *USA v. Hernandez et al.*, No. 21-cr-00279-AJB-1 (S.D. Cal. Jan. 31, 2022).)

Just over a week later, on February 8, 2022, a separate three-count indictment was filed in this District charging Petitioner with Conspiracy to Import and with Importation of Methamphetamine and Fentanyl, in violation of 21 U.S.C. §§ 952, 960, and 963, all as Class A felonies. (Doc. No. 1.) On February 10, 2022, Magistrate Judge Skomal, on oral motion of the Government, dismissed the related first-filed case without prejudice and

---

No. 47.) In light of the discrepancy, the Court permitted Petitioner additional time to file a reply. (Doc. No. 48.) Petitioner then filed two replies: one with a preface addressing the filing issue (Doc. No. 49), and one consisting only of the reply (Doc. No. 50). Upon the Court's review, the replies are substantively identical with the latter having only a few typographical differences. As such, all citations to Petitioner's reply hereafter are to the later filed document (Doc. No. 50).

[3]    Page number citations are to the electronic case filing system's automated pagination.

arraigned Petitioner on the newly-filed indictment. (*See* Doc. No. 6; Doc. Nos. 113–15, *USA v. Hernandez et al.*, No. 21-cr-00279-AJB-1 (S.D. Cal. Feb. 10, 2022).) Petitioner pleaded not guilty at arraignment. (Doc. No. 6.)

On February 22, 2022, Petitioner waived prosecution by indictment (Doc. No. 38-2 at 5:5–24), and a two-count superseding information was filed, charging Petitioner with Importation of Methamphetamine and Fentanyl in violation of 21 U.S.C. §§ 952 and 960, both as Class B felonies (Doc. No. 15). After being arraigned, Petitioner then pleaded guilty to both counts as charged in the superseding information under a plea agreement with the Government. (Doc. Nos. 16; 17.)

Prior to accepting Petitioner's guilty plea, the Court confirmed that Petitioner was in good health such that he could understand the proceedings and was not under the influence of any medication, drugs, or alcohol that would impact his ability to understand the proceedings. (Doc. No. 38-2 at 4:21–5:4.) The Court informed Petitioner of the mandatory minimum and potential maximums with regard to prison time, supervised release, and assessed fines, all of which Petitioner confirmed he understood. (*Id.* at 9:23–12:4.) The Court confirmed that Petitioner had spoken with Mr. Yoon "about the sentencing guidelines and how they might apply." (*Id.* at 11:4–6.) When asked if he had any questions about potential sentencing, Petitioner declined. (*Id.* at 12:5–9.) The Court further confirmed that Petitioner had read the plea agreement completely, discussed it thoroughly with Mr. Yoon, and had all of his questions answered. (*Id.* at 12:10–13:8.)

On July 18, 2022, this Court held a sentencing hearing, at which Mr. Yoon argued for a 60-month sentence, while the Government proposed a 240-month sentence. (*See* Doc. Nos. 22; 23; 38-3.) Considering the parties' arguments, statutory factors, the applicable sentencing guidelines, and the specific history and characteristics of Petitioner, the Court sentenced Petitioner to 151 months of imprisonment and supervised release for four years, with each count to run concurrently. (Doc. Nos. 25; 26.)

On July 17, 2023, Petitioner timely filed the instant § 2255 habeas Motion. (Doc. No. 28.)

## II.    LEGAL STANDARD

A federal prisoner in custody under a sentence of a court may move to vacate, set aside, or correct the sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). To warrant relief under § 2255, a prisoner must allege a constitutional, jurisdictional, or otherwise "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 783 (1979). If it is clear a petitioner has failed to state a claim, or has "no more than conclusory allegations, unsupported by facts and refuted by the record," a district court may deny a § 2255 motion without an evidentiary hearing. *United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986).

## III.    DISCUSSION

### A.    Petitioner's Ineffective Assistance of Counsel Claims

In the instant Motion, Petitioner asserts three violations of his Sixth Amendment right to effective assistance of counsel, all centering around Mr. Yoon's presentation of plea offers to Petitioner.[4] (Doc. No. 28 at 4–6.)

#### 1.    Legal Standard

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). "[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (referencing *Strickland v. Washington*, 466 U.S. 668 (1984)). To prevail on a claim of ineffective assistance of

---

[4]    The instant Motion identifies two different pleas Petitioner asserts the Government offered. (*See generally* Doc. Nos. 28; 50.) For clarity, the Court will analyze Petitioner's claims chronologically, first addressing the claims stemming from the alleged first plea offer (Grounds 2 and 3) and second addressing the claim regarding the plea agreement Petitioner accepted (Ground 1).

counsel, a petitioner must show that (1) counsel's representation was deficient such that it "fell below an objective standard of reasonableness," and (2) counsel's deficient performance prejudiced the petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687–88, 694. "In the context of pleas[,] a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163.

The first prong of the *Strickland* test requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *see also Strickland*, 466 U.S. at 689 (noting there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance").

The second prong requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In the context of an accepted guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Where the plea offer was rejected, "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 566 U.S. at 164.

Unless the petitioner can make a showing for both *Strickland* prongs, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process[.]" *Strickland*, 466 U.S. at 687.

### 2.   Alleged Coercion Regarding First Plea Offer (Grounds 2 and 3)

Petitioner claims he "was coerce[d] and advi[sed] not to take the first plea agreement of unlawful disregard charge" because "it was not a definite sentence but an open plea . . . ." (Doc. No. 28 at 5–6.) However, Petitioner argues that the first plea offer "was a lesser offense level [so he] would [have] been sentenced to lesser time" (*id.* at 6) and it would "not [have] effect[ed] First Step Act [("FSA")] credit eligibility" (*id.* at 5).[5]

According to Petitioner, the Government offered Petitioner two different plea offers. (*See* Doc. Nos. 28; 50.) First, the Government offered Petitioner a "plea agreement of unlawful disregard." (Doc. Nos. 28 at 5; 50 at 1–2.) However, Petitioner explains he did not accept this plea offer because of how Mr. Yoon presented it:

> When Mr. Yoon presented this plea agreement he caused fear in me stating (1) that he felt it was not a good plea agreement because it was an open plea of 0–20 years and (2) that he felt that the government would be giving me the higher end 20 years and (3) that with my criminal history I would be sentenced as a career offender and (4) [h]e even stated that it was a lower offense level by 2 or 3 points but that it didn't matter because of my criminal history the outcome would be the same. Mr. Yoon used this fear and coerced me, and misadvised me not to take this plea agreement.

(*Id.*) About one week after Petitioner rejected the first plea offer, on February 8, 2022, the Government filed the indictment charging him with an additional count of conspiracy to import methamphetamine and fentanyl. (*Id.* at 1.)

---

[5]    The First Step Act of 2018 implemented various prison and sentencing reforms, including a directive to establish evidence-based recidivism reduction programs and incentives for inmates to participate in anti-recidivism programs. Pub. L. No. 115-391, 132 Stat. 5194 (2018). Under the First Step Act, eligible prisoners may earn time credits for "successfully complet[ing] evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A). However, prisoners serving sentences for conviction of certain offenses are statutorily ineligible for such credits. 18 U.S.C. § 3632(d)(4)(D).

In its opposition, the Government counters that "[t]he only plea offers made by the United States in this case were offers to plead to the importation of fentanyl and methamphetamine (or the conspiracy to import these drugs)." (Doc. No. 38 at 5.) Mr. Yoon submitted a declaration averring the same. (Doc. No. 38-1 ¶ 7 ("Mr. Hernandez's motion refers to an 'unlawful disregard' plea offer. I do not know what that means. The only plea offers the government made were for Mr. Hernandez to plead to importation and/or conspiracy to import.").)

As with Mr. Yoon and the Government, the Court is not aware of an "unlawful disregard" offense to which Petitioner could have pleaded. Further, liberally construing Petitioner's Motion in light of his *pro se* status, the Court cannot independently ascertain an offense to which Petitioner could have pleaded that fits his allegations. As such, Petitioner fails to demonstrate that there was any probability, let alone a reasonable one, that the Court would have confirmed such a plea agreement had it been accepted by Petitioner and presented to the Court. *Cf. Lafler*, 566 U.S. at 164.

Accordingly, the Court **DENIES** the instant Motion with regard to allegations that Mr. Yoon coerced Petitioner into rejecting a prior, more favorable plea offer.

2.     Alleged Coercion Regarding the Plea Agreement (Ground 1)

Petitioner asserts he was "coerce[d]" by Mr. Yoon into taking the plea agreement based on "misleading or misrepresentation regarding [his] First Step Act (F.S.A.) credit eligibility . . . ." (Doc. No. 28 at 4.) Specifically, Petitioner states that the Bureau of Prisons (the "BOP") labeled him "ineligible." (*Id.*) Petitioner provides no further facts regarding his conclusion of coercion in either the instant Motion or his reply. "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

Moreover, his allegations of coercion are belied by the Change of Plea Hearing, wherein the Court questioned Petitioner extensively regarding the plea agreement. Petitioner averred that he had read the agreement completely, thoroughly discussed it with Mr. Yoon who answered all his questions, and was not promised anything, threatened by

7

anyone, nor rushed or hurried in making his decision to plead guilty.[6] (Doc. No. 38-2 at 12:9–13:9, 16:8–25.) "These 'solemn declarations in open court carry a strong presumption of verity.'" *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir. 1989) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Accordingly, the Court **DENIES** the instant Motion with regard to allegations Mr. Yoon coerced Petitioner into taking the plea agreement.

### 3. Alleged Misrepresentation or Misleading Advice (Ground 1)

Petitioner asserts that Mr. Yoon or Mr. Yoon's investigator drafted a set of calculations that appear to reflect sentencing estimates that account for reductions due to "good time," "time served," "RDAP," and "1/2 way house." (Doc. Nos 28 at 12; 50 at 2–3.) Mr. Yoon allegedly handed this paper to Petitioner "tell[ing him] that this is what [Petitioner] had to expect if [he] got sentenced to 5[,] 6[,] 7[, or] 8 years." (Doc. No. 50 at 2–3.) However, Petitioner states that the BOP has marked him ineligible for FSA credits (Doc. No. 28 at 4), which has had a "huge adverse effect" on Petitioner as he cannot reduce his sentence through the earning of FSA credits.[7] (Doc. No. 50 at 3.)

Mr. Yoon counters that "[i]t is [his] understanding that [his] investigator prepared

---

[6] Petitioner's reply indicates he may have a concern regarding his competence at the Plea Hearing. (Doc. No. 50 at 2 (". . . I do have my full sobriety[.] I am far more competent mentally and emotionally th[a]n I was when I was present in your court room.").) "When analyzing competence to plead guilty, we look to whether a defendant has the ability to make a reasoned choice among the alternatives presented to him." *United States v. Howard*, 381 F.3d 873, 878 (9th Cir. 2004) (quoting *Miles v. Stainer*, 108 F.3d 1109, 1112 (9th Cir.1997)). Where a petitioner makes "bald, conclusory or inherently incredible assertions" of incompetence to plead guilty due to drug use "a district court has the discretion to dismiss the petition without a hearing." *Howard*, 381 F.3d at 879. Here, Petitioner only raises the specter of incompetence by referencing his comparative sobriety. Such references alone are insufficient to challenge Petitioner's guilty plea on the ground of competence. In contrast, Petitioner testified at the Plea Hearing to being in good health such that he could understand the proceedings and not under the influence of any medication, drugs, or alcohol that would impact his ability to understand the proceedings. (Doc. No. 38-2 at 4:21–5:4.) Moreover, at the Sentencing Hearing five months after the Plea Hearing, Petitioner read letters to the Court asserting he was currently 20 months sober. (Doc. No. 38-3 at 19:1–5.)

[7] The Court notes that Petitioner argues that Mr. Yoon failed to properly advise him that accepting the plea offer would make him FSA credit ineligible, while also arguing that he was incorrectly deemed ineligible. Considering Petitioner's *pro se* status, the Court addresses each argument in turn on its own merits. *See* Sections III.A.3 *and* III.A.4.

8

those calculations for Mr. Hernandez," but not at Mr. Yoon's request. (Doc. No. 38-1 ¶ 5.) Mr. Yoon states he neither prepared nor asked another to prepare the calculation sheet. (*Id.*) Finally, Mr. Yoon avers that he has no record or recollection of advising Petitioner about his eligibility for FSA credit, either independently or upon Petitioner's inquiry. (*Id.* ¶ 4.)

First, the Court turns to whether Mr. Yoon's alleged conduct, or lack of conduct, falls below the objective standard of reasonableness. Assuming Petitioner's factual allegations are correct—that either Mr. Yoon or his investigator drafted the document— calculations demonstrating potential impact of programs and credits that may reduce different possible sentences are not objectively unreasonable under the instant circumstances. Sentence reduction through programs and credits depends on a myriad of factors, including program availability, the BOP's assessment of Petitioner's risk levels, and Petitioner's actions, behavior, and performance. Petitioner does not allege that Mr. Yoon promised, guaranteed, or otherwise advised Petitioner that he would actually receive those reductions. In fact, the existence of four sets of calculations, each based on a different sentence, underscore their speculative nature. Although the calculations reflect sentences lower than that which Petitioner received, the lowest calculation was for a 60-month sentence—the minimum Petitioner could receive and the sentence for which Mr. Yoon argued. As such, even assuming Petitioner's allegations to be true, the Court does not find such calculations to be a gross mischaracterization or patently erroneous advice. *See Sophanthavong v. Palmateer*, 378 F.3d 859, 868 (9th Cir. 2004) ("Erroneous predictions regarding a sentence are deficient only if they constitute gross mischaracterization of the likely outcome of a plea bargain combined with erroneous advice on the probable effects of going to trial.") (cleaned up).

Further, the Court does not find that failing to independently inform Petitioner regarding the impact of his guilty plea on his FSA eligibility is objectively unreasonable. *See Torrey v. Estelle*, 842 F.2d 234, 237 (9th Cir. 1988) ("[Counsel's f]ailure to advise [the defendant] of a collateral penalty cannot be held to be below an objective standard of

1    reasonableness.").[8]

2    Second, even if the Court were to find that the alleged conduct fell below an

3    objective standard of reasonableness, providing Petitioner with such calculations was not

4    prejudicial under the second *Strickland* prong. *See Gonzalez v. United States*, 33 F.3d 1047,

5    1051–52 (9th Cir. 1994) (finding the defendant not prejudiced by "alleged gross error in

6    calculating the sentencing guidelines range and likely sentence" where the defendant was

7    informed of the maximum possible sentences and fines and responded affirmatively when

8    asked if satisfied with counsel). Here, before taking Petitioner's plea, the Court informed

9    Petitioner of the mandatory minimum and potential maximums with regard to prison time,

10   supervised release, and assessed fines, all of which Petitioner confirmed he understood.

11   (Doc. No. 38-2 at 9:23–10:6, 11:17–12:4.) The Court confirmed that Petitioner had spoken

12   with Mr. Yoon "about the sentencing guidelines and how they might apply." (*Id.* at 11:4–

13   6.) When asked if he had any questions about potential sentencing, Petitioner declined. (*Id.*

14   at 12:5–9.) Because Petitioner was informed of the potential maximums he could face at

15   sentencing, he was not prejudiced by being provided incorrect potential calculations.

16   Additionally, Petitioner does not assert that, had counsel accurately advised him of

17   the effect of his guilty plea on FSA credit eligibility, he would have rejected the plea offer

18   and insisted on going to trial. *See Hill*, 474 U.S. at 59. Nor did Petitioner allege any special

19   circumstances that might support the conclusion that he placed particular emphasis on his

20   FSA credit eligibility in deciding whether to plead guilty. *See id.* Moreover, if Petitioner

21   had not accepted the plea agreement, he would have faced a three-count indictment where

22   each count carried a term of imprisonment of ten years to life. (Doc. No. 38 at 1–2.) As

23

24   _____

25   [8]      In its opposition, the Government asserts that "Mr. Yoon could not have been grossly incompetent
     in failing to advise [Petitioner] about FSA time credit when [Mr. Yoon] was never asked for his advice."

26   (Doc. No. 38 at 11.) Although the Court arrives at the same conclusion as the Government regarding the
     first *Strickland* prong, the Court notes that the Government's argument is conclusory and overstated. Read

27   broadly, the Government is implying that an attorney has no affirmative duty to advise a defendant, which
     is incorrect. Read narrowly, the Government relies on an unstated assumption that a reasonably competent

28   attorney would not independently advise a defendant regarding FSA credit eligibility.

such, the Court finds no evidence suggesting Petitioner wanted to go or would have insisted on going to trial but for Mr. Yoon's purported deficiency. *See United States v. Silveira*, 997 F.3d 911, 916 (9th Cir. 2021) (acknowledging it was "simply . . . not plausible" that the defendant would have insisted on going to trial, in part because he would have faced a longer sentence had he gone to trial).

Accordingly, the Court **DENIES** the instant Motion with regard to allegations Mr. Yoon provided constitutionally deficient advice regarding the plea agreement Petitioner accepted.

### 4.   Alleged Errors Related to FSA Eligibility

Petitioner also claims error regarding the BOP's clerical recording of Petitioner's FSA eligibility. (*See* Doc. Nos. 28 at 4; 50 at 3–4.) Petitioner represents that the BOP originally labeled Petitioner as FSA ineligible pursuant to 18 U.S.C. § 3632(d)(4)(lxvi)–(lxvii).[9] (Doc. No. 50 at 4.) Petitioner argues that was error because 18 U.S.C. § 3632(d)(4)(lxvi) was "unlawfully applied" to "unlawfully determine [him] to be statutorily ineligible." (*Id.*) However, Petitioner also asserts his case manager informed him that, a week prior to filing his reply, it was determined that the BOP had erred in marking him ineligible because he did not have a leadership role and subparagraph lxviii,[10] not

---

[9]   Subparagraph lxvii of 18 U.S.C. 3632(d)(4)(D) deems ineligible prisoners serving a sentence for conviction pursuant to 21 U.S.C. 960(b) of "manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, or knowingly importing or exporting, a mixture of substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, **if the sentencing court finds that the offender was an organizer, leader, manager, or supervisor of others in the offense**, as determined under the guidelines promulgated by the United States Sentencing Commission." 18 U.S.C. 3632(d)(4)(D)(lxvii) (emphasis added). Subparagraph lxvi deems ineligible prisoners serving a sentence for conviction of "manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide[—commonly known as fentanyl—]or any analogue thereof" under 21 U.S.C. 960(b)), with no leadership role requirement. 18 U.S.C. 3632(d)(4)(D)(lxvi).

[10]   Subparagraph lxviii deems FSA ineligible a prisoner convicted pursuant to 21 U.S.C. 960(b) of "manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, a controlled substance, or knowingly importing or exporting a controlled substance, if the sentencing court finds that (I) the offense involved a mixture or substance containing a detectable amount of [fentanyl], or

subparagraph lxvi, applies. (Doc. No. 50 at 3–4.) Petitioner states that he is now "awaiting the new composition sheet establishing that [he is] FSA eligible." (*Id.* at 4.)

Taking Petitioner's assertions as true, any complaint Petitioner had as to his ineligibility became moot when rectified by the BOP. *See* U.S. CONST. art. III, § 2, cl. 1; *see also United States v. Livar*, 108 F.4th 738, 742 (9th Cir. 2024) ("A case becomes moot when it no longer satisfies the case-or-controversy requirement of the Constitution, which demands that the parties continue to have a personal stake in the outcome of the lawsuit.") (internal quotation marks and citation omitted). If Petitioner believes a further error with the BOP's application of statutory eligibility remains, then such a claim is not appropriately brought as an ineffective assistance of counsel claim under § 2255. *See Pinson v. Carvajal*, 69 F.4th 1059, 1066 (9th Cir. 2023), cert. denied sub nom. *Sands v. Bradley*, 144 S. Ct. 1382 (2024) ("[M]otions to contest the legality of a sentence must be filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court.").

To the extent, Petitioner is claiming that Mr. Yoon provided ineffective assistance of counsel because he did not "ma[k]e any effort to properly address this [alleged] error concerning [his] FSA eligibility" (Doc. No. 50 at 4), such a claim is meritless because Mr. Yoon's representation of Petitioner ended with sentencing, only after which the BOP's alleged error could have occurred.

Accordingly, the Court **DENIES** the instant Motion with regard to alleged errors in his FSA eligibility.

## IV.    APPOINTMENT OF COUNSEL & EVIDENTIARY HEARING

In his reply, Petitioner requests that the Court appoint counsel. (Doc. No. 50 at 3.) "[T]he protections of the Sixth Amendment right to counsel do not extend to either state

---

any analogue thereof; and (II) the offender was an organizer, leader, manager, or supervisor of others in the offense, as determined under the guidelines promulgated by the United States Sentencing Commission." 18 U.S.C. 3632(d)(4)(D)(lxviii).

collateral proceedings or federal habeas corpus proceedings." *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). However, the Court may provide a financially eligible § 2255 petitioner with representation when "the interests of justice so require . . . ." 18 U.S.C. § 3006A(a)(2)(B). "Unless an evidentiary hearing is required, the decision to appoint counsel is within the discretion of the district court." *Knaubert v. Goldsmith*, 791 F.2d 722, 728 (9th Cir. 1986); *cf.* R. 8(c), Rules Governing Section 2255 Proceedings ("If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A.").

A district court must hold an evidentiary hearing before denying a § 2255 motion, unless it is conclusively shown that the petitioner is entitled to no relief. 28 U.S.C. § 2255(b); *see also Hendricks v. Vasquez*, 908 F.2d 490, 491 (9th Cir. 1990) ("Summary dismissal is appropriate only where the allegations in the petition are 'vague or conclusory' or 'palpably incredible,' or 'patently frivolous or false.'") (quoting *Allison*, 431 U.S. at 75–76). However, if it is clear the petitioner has failed to state a claim, or has "no more than conclusory allegations, unsupported by facts and refuted by the record," a district court may deny a § 2255 motion without an evidentiary hearing. *Quan*, 789 F.2d at 715. As discussed above, the Court finds that Petitioner has failed to state a claim on all grounds. The Court finds that an evidentiary hearing is not required and, accordingly, **DENIES** Petitioner's request for appointment of counsel.

## V.   CERTIFICATE OF APPEALABILITY

Lastly, "[u]nder the Antiterrorism and Effective Death Penalty Act of 1996, there can be no appeal from a final order in a § 2255 proceeding unless a circuit justice or judge issues a certificate of appealability." *Welch v. United States*, 578 U.S. 120, 127 (2016) (citing 28 U.S.C. § 2253(c)(1)). A court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "That standard is met when 'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner.'" *Welch*, 578 U.S. at 127 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Having reviewed the record, the Court finds that no reasonable jurist would dispute that Mr. Yoon's challenged performance fell within the "wide range of reasonable professional assistance." *See Strickland*, 466 U.S. at 689. The Court therefore **DENIES** a certificate of appealability.

## VI.    CONCLUSION

After careful consideration, the Court finds that Petitioner's Motion, the briefs filed in opposition thereto and support thereof, and the record as a whole "conclusively show that [Petitioner] is entitled to no relief." 28 U.S.C. § 2255(b). Accordingly, the Court **DENIES** Petitioner's Motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, **DENIES** Petitioner's request to appoint counsel, and **DENIES** a certificate of appealability because Petitioner has not "made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court is instructed to enter judgment in both the underlying criminal case and Petitioner's civil case and close Petitioner's civil case.

**IT IS SO ORDERED**.

Dated:  October 28, 2024

Hon. Anthony J. Battaglia
United States District Judge

23-cv-01319-AJB; 22-cr-00262-AJB